## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RICHARD HAZELTON,

        **Plaintiff,**

vs.                                  **No. CIV 05-874 LCS/KBM**

CITY OF ROSWELL, et al.,

        **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, filed August 22, 2006. (Doc. 19.)  The Court, acting upon consent and designation pursuant to 28 U.S.C. § 636(c), having considered the motion, pleadings, memoranda, exhibits, and relevant authorities, finds that there is no genuine issue of material fact and that the motion should be **GRANTED** with respect to Plaintiff's claims based upon federal law, and that Plaintiff's pendent state law claims should be **DISMISSED** without prejudice.

### I.    FACTS.

To the extent that any facts are disputed, I find that they are immaterial.  That said, the Court finds the following undisputed facts:

Plaintiff is a resident of Roswell, New Mexico.  (Docs. 20 at 2; 24 at 4.)  His address at the time of the events at issue was 1210 North Kentucky, Roswell, New Mexico.  (Docs. 20 at 2; 24 at 4.)  Also at the time of the events at issue, Defendant Kenneth Roberts was employed as a police officer by the City of Roswell, (Docs. 20 at 2; 24 at 4.) Defendant Hector Pineda was a municipal court judge in the city of Roswell, (Doc. 24 at 9.) and Defendant Roberta Vasquez was a code enforcement officer in the city of Roswell.  (Docs. 20 at 5; 24 at 6, 9.)

On August 26, 2003, Officer Roberts was dispatched to Plaintiff's residence to investigate complaints made regarding Plaintiff's activities on the premises.  (Docs. 20 at 3; 24 at 4.)  When Roberts arrived, he observed Mr. Hazelton welding metal gates.  (Docs. 20 at 2-3; 24 at 4.)  Defendant Roberts questioned Hazelton regarding whether Hazelton was welding the gates for someone else, and whether he was being paid to do it.  (Doc. 24, Ex. B at 5.)  Plaintiff responded that he was indeed welding the gates for someone else, and that he was being paid as a contract laborer.[1]  (Id. at 5.)  Officer Roberts then informed Mr. Hazelton that such activity constituted operating a business out of his home, and that he needed a license to continue the activity.  (Id. at 5-6.)  Plaintiff indicated that he did not have a business license.  (Id. at 5-6; Doc. 20 at 3.)  Roberts then asked Hazelton to move the gate construction operations to a different location, but Hazelton refused.

---

[1] Hazelton appears to dispute this fact in his response to the motion for summary judgment.  (Doc. 24 at 4.)  He also disputes that Officer Roberts informed him that his activities constituted operating a business out of his home, that he needed a license for such activity, and that the Code Enforcement Division told Officer Roberts that Hazelton's activities violated a Roswell ordinance.  *See* discussion *infra* pp. 2-3.  But he disputes these facts by mere allegation, unsupported by affidavit or otherwise.  Federal Rule of Civil Procedure 56(e) provides that:

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e).  *See also Weir v. Anaconda Co.*, 773 F.2d 1073, 1080 n. 4 (10th Cir. 1985) (stating that despite plaintiff's allegations in support of his claim, "we believe . . . summary judgment . . . was proper for defendant because when a motion for summary judgment with supporting affidavits is pending before a court, the adverse party 'may not rest upon the *mere allegations* or denials of his pleadings.'").  I find these facts are established in light of the affidavit submitted by Defendants and other materials submitted by the parties.  (Doc. 20, Ex. 2 at 2; Doc. 24, Ex. B at 5.)  Nothing submitted by Plaintiff other than his mere allegations contradicts these facts.

2

(Docs. 20 at 3, Ex. B at 6; Doc. 24 at 5.)

Defendant Roberts then left Plaintiff's residence and contacted the Roswell Code Enforcement Division to confirm that Hazelton needed a business license to continue his gate-welding activity. (Docs. 20 at 3; 24 at 5.)  The Code Enforcement Division told Roberts that Hazelton's activities violated Roswell Ordinance No. 01-06, which provides that: "it is unlawful for any person to engage in conduct or carry on any business or occupation within the City of Roswell without first registering the same or obtaining a license therefor and without first paying the fees . . . ." (Docs. 20 at 2, Ex. 2 at 2; 24 at 4.)  When Roberts returned, he attempted to issue Plaintiff a citation for operating a business at his residence without a license, in violation of Roswell Municipal Ordinance No. 01-06. (Docs. 20 at 4; 24 at 5.)  Defendant Roberts requested that Hazelton produce a driver's license, explaining that Roswell Police Department policy requires a driver's license before a citation can be issued.  (Docs. 20 at 4; 24 at 5-6, 8, Ex. B at 9.)  Plaintiff gave Officer Roberts his name, date of birth, and other pertinent information regarding his identification, but he refused to give Roberts his driver's license.  (Docs. 20 at 4; 24 at 5-6, 8, Ex. B at 1-6.)  Officer Roberts told Mr. Hazelton that the alternative to citation is arrest.  (Docs. 20 at 4; 24 at 6.)  Plaintiff persisted in his refusal to give his license to Defendant Roberts.  (Docs. 20 at 4; 24 at 6.)

On August 29, 2003, Roberts filed a criminal complaint against Hazelton in the Roswell Municipal Court based upon the unlawful operation of a business from a residence.  (Docs. 20 at 4, Ex. 2; 24 at 6.)  Judge Pineda issued a warrant for Hazelton's arrest.  (Docs. 20 at 4, Ex. 2; 24 at 6.)

On August 30, 2003, Roberts arrested Plaintiff pursuant to the arrest warrant.  (Doc. 20 at 5, Ex. 2 at 3; 24 at 6.)  Judge Pineda subsequently dismissed Officer Roberts's complaint without

prejudice, noting that ordinance 01-06 as written on the citation did not exist. (Docs. 20 at 5; 24 at 6, 9.)  Several days later, Defendant Vasquez re-filed a criminal complaint based upon Plaintiff's activities on August 26, 2003.  (Docs. 20 at 5; 24 at 6, 9.)  The complaint was based upon her interview with Officer Roberts and review of pertinent documents.  (Doc. 20, Ex. 3 at 2.)  Judge Pineda ordered Plaintiff to appear in Court on September 18, 2003.  (Docs. 20 at 5; 24 at 6.)

On September 17, 2003, Hazelton filed a Writ of Abatement and a Writ of Prohibition in the Fifth Judicial District Court.  (Docs. 20 at 5; 24 at 7.)  On September 18, 2003, Plaintiff did not appear as ordered in the Roswell Municipal Court.  (Docs. 20 at 5; 24 at 10.)  The Court issued a bench warrant for Hazelton's arrest.  (Docs. 20 at 5; 24 at 10.)  Authorities arrested Hazelton pursuant to the bench warrant, the court found Hazelton in contempt, and the court sentenced Hazelton to thirty days in jail.  (Docs. 20 at 5; 24 at 7.)

In October of 2003, a trial was held in the Roswell Municipal Court before Judge Fred Tucker.  (Docs. 20 at 5; 24 at 7.)  Hazelton was found guilty of proper business location.  (Docs. 20 at 5, Ex. 3 at 3; 24 at 7.)  Hazelton appealed the Municipal Court's decision to the Fifth Judicial District Court, which held a trial *de novo*. (Docs. 20 at 5; 24 at 7.)  The Fifth Judicial District Court found Hazelton guilty of operating a business at his home without a license .  (Docs. 20 at 6, Ex. 3 at 3; 24 at 7.)  On April 5, 2006, the New Mexico Court of Appeals affirmed Plaintiff's conviction. (Doc. 20, Ex. 5.)

## II.    SUMMARY JUDGMENT STANDARD.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV.

4

P. 56(c).  Generally, the Movant bears the initial burden of establishing that no genuine issue exists

as to any material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citation omitted).

When applying this standard, the Court examines the record and reasonable inferences "in the light

most favorable to the nonmoving party."  *See Simms v. Oklahoma ex rel. Dep't of Mental Health &*

*Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citation omitted).  "Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  The

Movant's initial burden may be discharged by showing "there is an absence of evidence to support

the non-moving party's case."  *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).  Once the Movant

meets its burden, the burden shifts to the non-moving party to demonstrate that there is a genuine

issue for trial on a material matter.  *See Simms*, 165 F.3d at 1326 (citation omitted).

## III.    ANALYSIS.

Defendants have raised a plethora of arguments in their Motion for Summary Judgment.

Plaintiff has responded in kind.  I find it unnecessary to address each of Defendants' arguments and

Plaintiff's responses as they have been presented.  Rather, I will discuss them, as appropriate, in the

context of the claims raised by Plaintiff in the complaint.[2]  Plaintiff brings his first three claims under

title 42 U.S.C. § 1983.  Specifically, Plaintiff alleges: (A) wrongful arrest and detention against

Officer Roberts and the City of Roswell; (B) retaliation against Officer Roberts; and (C) wrongful

detention against Judge Pineda.  (Doc. 1 at 8-12.)  Plaintiff's (D) remaining claims are based upon

---

[2] I note here that Plaintiff does not bring a claim against Defendant Roberta Vasquez.
Plaintiff concedes this in his response to Defendants' Motion for Summary Judgment.  Summary
judgment in favor of Ms. Vasquez is therefore appropriate.

state law. (Id. at 12-13.)

      **A.**      **Wrongful Arrest and Detention Claims Against Officer Roberts and the City of Roswell.**

I find that Defendants are entitled to summary judgment as to these claims.  In support of these claims, Plaintiff alleges that he was not in violation of Roswell's ordinance, that Officer Roberts had no probable cause to cite him or procure a warrant for his arrest, and that Roswell's policy requiring picture identification was unlawful.  (Doc. 1 at 8-9.)  I believe Plaintiff's first two assertions can be resolved together.  Therefore, I will address them first, and then I will discuss my resolution of Plaintiff's third allegation.  Lastly, I will explain why Officer Roberts is entitled to qualified immunity regardless of how Plaintiff's claims are otherwise resolved.

*Plaintiff's Assertions that He Did Not Violate a Roswell City Ordinance and that Officer Roberts Had No Probable Cause to Cite Him or Procure a Warrant for His Arrest.*

Defendants argue that Plaintiff cannot sustain claims for wrongful arrest or detention because his conviction has not been overturned.  (Doc. 20 at 9.)  I agree with Defendants to the extent that Plaintiff's claims are based upon his allegations that he did not violate Roswell's ordinance and that Officer Roberts had no probable cause to cite or arrest him.   The Supreme Court's decision in *Heck v. Humphrey* provides the appropriate guidance here.  512 U.S. 477 (1994).  In *Heck*, an inmate brought a suit under § 1983 against prosecutors and a state police investigator alleging that his conviction violated his constitutional rights.  *Id.*  The Court noted that § 1983 "'creates a species of tort liability.'"  *Id.* at 483 (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986)).  The Court analogized the plaintiff's claim to a malicious prosecution action, and noted that one element a plaintiff must allege in a malicious prosecution action "is termination of the prior criminal proceedings in favor of the accused."  *Id.* at 484.  The Court held that:

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87.

Here, Plaintiff's conviction has not been overturned.  Plaintiff's two assertions, if established, would imply the invalidity of his conviction.  If Plaintiff had not been in violation of Roswell's ordinance, his conviction would have been without basis.  Similarly, if Officer Roberts had no probable cause to cite or arrest Plaintiff, then Plaintiff's conviction would have been wrong in this case.[3]  Plaintiff's conviction, however, has not been overturned.  In fact, it has been upheld on

---

[3] The Tenth Circuit has held that a showing of no probable cause would not necessarily implicate the invalidity of a conviction.  *See Laurino v. Tate*, 220 F.3d 1213, 1217 (10th Cir. 2000) ("[A] suspect's proof that police lacked probable cause to arrest him does not necessarily imply the invalidity or unlawfulness of his conviction for the underlying offense.").  However, I believe it would do exactly that in *this* case.  As noted by the Fifth Judicial District Court, the complaint filed against Hazelton by Defendant Vasquez appears to have been based substantially upon an interview with Officer Roberts and his observations regarding Hazelton's activities on August 26, 2003. (Docs. 20 at 25, Ex.3 at 2; 24 at 6, Ex. D at TR-18.)  Officer Roberts used these observations to obtain the arrest warrant for Hazelton.  (Docs. 20 at 4, Ex. 2 at Ex. A.; 24 at 6.)  Therefore, if Plaintiff challenges whether Roberts had probable cause, he will inevitably challenge the facts that support his conviction.  *See Laurino*, 220 F.3d at 1217 n. 3 (noting an exception to the rule that a showing of no probable cause will not necessarily implicate the invalidity of a conviction "where all the evidence to be presented was obtained as the result of an illegal arrest") (citing *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 559 n. 4 (10th Cir. 1999)).

appeal.

I recognize that the federal courts are divided on the reach of *Heck*'s holding; specifically, whether it extends to cases involving individuals not in custody.  Much of this division stems from Justice Souter's concurring opinion in *Heck* and later agreement with this concurrence by the concurring and dissenting opinions (involving a total of five justices) written in *Spencer v. Kemna*, 523 U.S. 1 (1998).  *See Jiron v. City of Lakewood*, 392 F.3d 410, 413 n. 1 (2004) (providing a discussion on Justice Souter's concurrence in *Heck*, and a concurrence to the Supreme Court's later decision in *Spencer*).  *See also Jackson v. Loftis*, 2006 WL 2053822, at *2 (10th Cir. 2006) (declining to address Plaintiff's *Heck* argument, but recognizing the federal courts' division as to *Heck*'s applicability and citing *Dible v. Scholl*, 410 F. Supp. 2d 807 (N.D. Iowa 2006) (providing an excellent review of the *Heck* and *Spencer* decisions, as well as an overview of the dispute among the federal courts)).  I do not believe, though, that the non-controlling language in *Spencer* can override the Court's majority opinion in *Heck*, and my job is merely to decide whether the controlling law is applicable to the facts before me.  That said, I believe that *Heck* bars Plaintiff's action in the instant case to the extent Plaintiff's action implicates the invalidity of his conviction.  In *Heck*, the Supreme Court's rationale for creating the bar to § 1983 actions was to avoid parallel litigation, inconsistent judgments, and collateral attacks on standing convictions, and to obtain finality.  *Heck*, 512 U.S. at 484-86.  Here, the facts indicate that this case ended with the decision of the New Mexico Court of Appeals affirming the Fifth Judicial District Court's finding of guilt.  (*See* Doc. 20, Ex. 5.)  Thus, Plaintiff's conviction stands.  If I were to allow Plaintiff's § 1983 action to the extent that it implicates the invalidity of his conviction, I would allow parallel litigation, the possibility of an inconsistent judgment, and a collateral attack on a standing conviction.  This ruling would permit violation of "'a

8

strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Heck*, 512 U.S. at 484 (1994) (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991)).  I therefore find that Plaintiff cannot maintain his claims for wrongful arrest or detention based upon his assertions that he did not violate the city ordinance or that Officer Roberts had no probable cause to cite or arrest him.

### Plaintiff's Assertion that Roswell's Policy Requiring Picture Identification Was Unlawful.

Plaintiff's third assertion to support his claim for wrongful arrest or detention, that Roswell's policy requiring picture identification was unlawful, also fails, but for a different reason than his first two assertions.  Section § 1983 provides in pertinent part that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, *subjects, or causes to be subjected,* any citizen of the United States or other person within the jurisdiction thereof to the *deprivation of any rights, privileges*, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

42 U.S.C.A. § 1983 (emphasis added); *see also Abbott v. Village of Winthrop Harbor*, 205 F.3d 976, 981 (7th Cir. 2000) (providing, in a § 1983 action for alleged phone call interception in violation of Plaintiffs' Fourth Amendment rights, that "in order to find a municipality liable under § 1983, the plaintiffs must prove that a municipal policy or custom caused their injury.") (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) and *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986); *see also Crownover v. City of Lindsay, Ok.*, 229 F.3d 1162, 2000 WL 1234852, **2 (10th Cir. Sept.1, 2000).

Even if Plaintiff has sufficiently alleged that the Roswell police department policy was unlawful - a determination I need not make - he has failed to show that it deprived him of any rights

or privileges. Plaintiff was not arrested pursuant to the department policy. He was arrested because Officer Roberts suspected him of violating the Roswell ordinance requiring that he have a license to operate a business out of his home. "New Mexico law categorizes violations of municipal ordinances as petty misdemeanors." *Tanberg v. Sholtis*, 401 F.3d 1151, 1157 n.1 (10th Cir. 2005) (citing *State v. Luna*, 606 P.2d 183, 187 (N.M. 1980) and N.M.S.A. 1978 §§ 3-17-1 and 30-1-6(C)). Moreover, New Mexico law allows for the arrest of an individual where an officer has probable cause to believe that individual has committed a petty misdemeanor. *See* N.M.S.A. 1978 § 31-1-6 ("A law enforcement officer who arrests a person . . . for a petty misdemeanor . . . may offer the person arrested the option of accepting a citation to appear in lieu of taking him to jail."). Here, the police department policy may have been a factor in Officer Roberts's decision to take Plaintiff into custody, but it was not the basis for Plaintiff's arrest. Plaintiff's right or privilege to be free from seizure was abrogated because Officer Roberts had probable cause (*see* discussion *infra* pp. 13-14) to suspect him of violating a city ordinance, and Officer Roberts had a warrant for his arrest issued by a neutral judge.

### *Officer Roberts is Entitled to Qualified Immunity.*

I find that the undisputed facts of this case support Officer Roberts's entitlement to qualified immunity on Plaintiff's claims for wrongful arrest and detention. Generally, government officials performing discretionary functions are provided "with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton* 483 U.S. 635, 638 (1987). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . .

assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* at 638

(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)).

### 1.    Summary Judgment Standard Where the Defense of Qualified Immunity Is Raised.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any

material fact . . . ." FED. R. CIV. P. 56(c).   "Generally, the Movant bears the initial burden of

establishing that no genuine issue exists as to any material fact." *Martinez v. City of Las Cruces*, Civ.

No. 04-1136, Doc. 33 at 4 (D. N. M. June 20, 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 157 (1970)).   Summary judgment motions "involving a qualified immunity defense[,]" however,

are somewhat different.   *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995) (internal quotation

marks and citations omitted).   "'To reach the question of whether a defendant official is entitled to

qualified immunity, a court must first ascertain whether the plaintiff has sufficiently asserted the

violation of a constitutional right at all.'"   *Romero,* 45 F.3d at 1475 (quoting *Martinez v. Mafchir*,

35 F.3d 1486, 1490 (10th Cir. 1994) (citation omitted)); *see also Lighton v. University of Utah*, 209

F.3d 1213, 1221 (10th Cir. 2000).   I am required to "'first determine whether plaintiff's allegations,

if true, state a claim for a violation of a constitutional right that was clearly established when

defendant acted.'"[4] *Romero*, 45 F.3d at 1475 (quoting *Bisbee v. Bey*, 39 F.3d 1096, 1100 (10th Cir.

---

[4] "'Whether an asserted federal right was clearly established at a particular time . . . presents a question of law'" properly decided by the Court.   *Romero*, 45 F.3d at 1475 (quoting *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (citation omitted)).   "'Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.'"   *Id.* (quoting *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

1994) (citation omitted)); *see also Lighton*, 209 F.3d at 1221.

To meet this burden, the plaintiff "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it. Rather, [he] must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity . . . ." *Romero*, 45 F.3d at 1475 (citations omitted); *see also Lighton*, 209 F.3d at 1221. Further, the plaintiff must "'demonstrate a substantial correspondence between the conduct in question and prior law . . . establishing that the defendant's actions were clearly prohibited.'" *Romero*, 45 F.3d at 1475 (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993) (internal quotation marks and citation omitted)); *see also Lighton*, 209 F.3d at 1221. Unless the plaintiff can make the required demonstration, the defendant must prevail. *Romero*, 45 F.3d at 1475 (citations omitted); *see also Lighton*, 209 F.3d at 1221. "Once the plaintiff has sufficiently alleged the conduct violated clearly established law, then the defendant bears the burden, as a movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Romero*, 45 F.3d at 1475 (internal quotation marks and citations omitted); *see also Lighton*, 209 F.3d at 1221.

   2.   **Analysis.**

Plaintiff alleges that Officer Roberts "deprived [him] of his liberty under due process of law pursuant to [Plaintiff's] First and Fourth Amendment [rights] . . . ." (Doc. 1 at 8-9.) I will discuss the alleged violation of Plaintiff's First Amendment rights under his action for retaliation. Here, consistent with the claims presented, I will discuss the alleged violation of Plaintiff's Fourth Amendment right.

The Fourth Amendment provides in pertinent part that: "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated, and no Warrants shall

issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the . . . persons . . . to be seized."  U.S. Const. amend. IV.  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citing *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir.1990) (citing *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254, n. 9, 60 L.Ed.2d 824 (1979))); *see also Romero*, 45 F.3d at 1476.  If a warrant is issued by a court based upon facts conveyed by an officer, a plaintiff may recover under § 1983 for false arrest against the officer only if he can show that the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant" and that "such statements or omissions [were] material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir.2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.1997)); *see also DeLoach v. Bevers* 922 F.2d 618, 621-22 (10th Cir. 1990).  "A reckless disregard for the truth exists when 'the affiant in fact entertained serious doubts as to the truth of his  allegations' . . . ."  *DeLoach*, 922 F.2d at 622 (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984)).

Here, Plaintiff has failed to demonstrate any possibility that Officer Roberts violated Plaintiff's Fourth Amendment right to be free from seizure because the undisputed facts show that Roberts acted pursuant to an arrest warrant supported by probable cause, and that Officer Roberts did not knowingly, deliberately, or recklessly make false statements or omissions that would create a falsehood in applying for the warrant.  The undisputed facts, viewed in a light most favorable to Plaintiff, show that Officer Roberts went to Plaintiff's residence to investigate a complaint; that he

13

saw Plaintiff welding gates; that he questioned Hazelton about the purpose of the gate-welding; that he called the Code Enforcement Division to determine whether Hazelton was indeed violating a municipal ordinance; that the Code Enforcement Division confirmed to Officer Roberts that Hazelton was in violation of a municipal ordinance; that Officer Roberts warned Plaintiff of the illegality of his activity; and that the warrant was issued based upon these facts.  Other facts were asserted in the warrant affidavit, (*see* Doc.  20, Ex. 2 at Ex. A.) but the facts listed here are enough to support a finding of probable cause.

Moreover, the facts presented surrounding Plaintiff's activities and Defendant Roberts's investigation are entirely consistent with the allegations Defendant Roberts made in the warrant affidavit.  Other than mere allegations asserted by Plaintiff in his complaint and in his response to Defendants' Motion for Summary Judgment, which carry no weight in the face an opposing affidavit and other credible submissions (*see* discussion *supra* note 1),  I see no contradictions that would lead me or any reasonable person to believe Officer Roberts *might* have entertained serious doubts as to the truth of his allegations, much less that he knowingly or deliberately made false statements in his affidavit.  In fact, the warrant affidavit (*see* Doc.  20, Ex. 2 at Ex. A.) reads quite consistently with Roberts's affidavit submitted in support of the motion for summary judgment, (*see* Doc. 20, Ex. 2.) the transcript of the recorded dialogue that took place between Officer Roberts and Hazelton during Roberts's investigation, (*see* Doc. 24, Ex. B.) and the trial court findings. (*See* Doc. 20, Ex. 3.) Moreover, and very importantly, Plaintiff appears to agree as to the accuracy of the statements made by Officer Roberts in the warrant affidavit.  (*See* Doc. 20, Ex. 4 at 36-45.)  Plaintiff does point out that the code provision cited by Officer Roberts in his affidavit was incorrect.  Even if this is true, the undisputed facts firmly establish that Officer Roberts believed the code provision was correct.

Roberts learned of the code provision from the Code Enforcement Division. Thus, Officer Roberts is entitled to qualified immunity as to Plaintiff's claims for wrongful arrest and detention.

### B.     Retaliation Against Officer Roberts

I find that this claim is without merit and that Defendants are entitled to summary judgment. Plaintiff alleges that Officer Roberts arrested him because Plaintiff did not produce a picture identification, and that this violated Plaintiff's First Amendment rights. (Doc. 1 at 10-11.)  Plaintiff actually alleges violation of both his First *and* Fourth Amendment rights, but the gravamen of the retaliation claim appears to focus on a First Amendment violation. The alleged Fourth Amendment violation appears to be the result of the alleged First Amendment violation, and  I will rely on my discussion above pertaining to Plaintiff's wrongful arrest and detention claims in disposing of Plaintiff's Fourth Amendment allegation.  Regarding the retaliation claim based upon the First Amendment, I believe it fails for any of three independent reasons. First, Officer Roberts arrested Plaintiff pursuant to an arrest warrant.  Second, Plaintiff has not, nor can he, establish the elements to maintain a claim for retaliation.  And third, Officer Roberts is entitled to qualified immunity.

### *Officer Roberts Arrested Plaintiff Pursuant to an Arrest Warrant.*

Defendants argue that Plaintiff cannot sustain a claim for retaliation without first proving the absence of probable cause, and they argue that Plaintiff's conviction demonstrates the existence of probable cause. (Doc. 20 at 11.) Defendants cite *Hartman v. Moore* in support of their argument. 126 S.Ct. 1695 (2006).  I disagree with Defendants' use of *Hartman*.  *Hartman* involved a retaliatory-prosecution claim, and the issue here concerns retaliatory-arrest.  The rationale in *Hartman* for requiring a showing of no probable cause was based in large part on the fact that the person with the retaliatory motive was not one in the same as the person committing the retaliatory

act.  126 S.Ct. at 1704-06.  Here, the person with the alleged retaliatory motive and the person

allegedly committing the retaliatory act *are* one in the same.

That said, I do find Defendants are entitled to summary judgment on this claim.  There is no

clearly established right to be free from arrest supported by probable cause - regardless of the

arresting officer's motivation.  *See Whren v. United States*, 517 U.S. 806, 813 (1996) (providing in

a traffic stop and detention case that: "[n]ot only have we never held . . . that an officer's motive

invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held

and asserted the contrary"; citing other types of cases where motive seemed irrelevant where the

behavior was objectively justifiable).  An arrest made pursuant to an arrest warrant carries a

presumption of probable cause.  *See United States v. Mahoney*, 712 F.2d 956, 961 (5th Cir. 1983);

*Chipperini v. Crandall*, 253 F.Supp.2d 301, 311 (D.Conn. 2003).  Furthermore, "a conviction

represents a defense to a § 1983 action asserting arrest without probable cause."  *Howard v.*

*Dickerson*, 34 F.3d 978, 981 n. 2 (10th Cir. 1994).  In the instant case, Officer Roberts arrested

Plaintiff pursuant to a warrant *and* Plaintiff was convicted.  Hazelton's conviction has not been

overturned.  Therefore, I do not believe Plaintiff can claim, in this case, that Officer Roberts had no

probable cause to arrest him.  I find this is especially true given that Plaintiff's conviction was based

substantially upon the same observations made by Officer Roberts that led him to secure the arrest

warrant.  *See* discussion *supra* note 3.

It is true that not all federal courts entirely agree with the proposition that an officer's

motivation is irrelevant to an arrest supported by probable cause.  *See Stone v. Juarez*, 2006 WL

1305039, at *8 (D.N.M. 2006).  In *Stone*, the district court stated that:

> [T]he existence of probable cause is not determinative of the

16

> constitutional question if, as alleged here, the plaintiff was arrested in
> retaliation for his having engaged in constitutionally protected speech.
> The law is well established that 'an act taken in retaliation for the
> exercise of a constitutionally protected right is actionable under §
> 1983 even if the act, when taken for a different reason, would have
> been proper.

(quoting *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002)).  But I believe here the proposition

applies.  Not only did Officer Roberts have probable cause, but he obtained an arrest warrant prior

to the arrest.  As pointed out above in my discussion of Plaintiff's wrongful arrest and detention

claims, the warrant was properly supported and Officer Roberts did not deliberately, knowingly, or

recklessly make any false statements in procuring the warrant.  Officer Roberts therefore did not act

upon his own motivation, whatever that may have been, but upon an order issued by a neutral judge.

### *Plaintiff Has Not, Nor Can He, Establish the Elements to Maintain a Claim for Retaliation*.

I find that, based upon the undisputed facts, Plaintiff cannot establish the elements to support

a claim for retaliation.  To prevail on a claim for retaliation in violation of the First Amendment, a

plaintiff must show that: "'(1) he was engaged in constitutionally protected activity, (2) defendant's

actions caused him to suffer an injury that likely would chill a person of ordinary firmness from

continuing to engage in that activity, and (3) defendant's adverse action was substantially motivated

as a response to the plaintiff's exercise of constitutionally protected conduct.'"  *Stone*, 2006 WL

1305039, at *8 (quoting *Lackey v. County of Bernalillo*, No. 97-2265, 1999 U.S.App. LEXIS 75,

at *11 (10th Cir. Jan. 5, 1999) (citations omitted)).

Here, Plaintiff has not established, nor given the facts, can he establish, these elements.  *Stone*

involved the warrantless arrest of a plaintiff for yelling an obscenity in a crowded mall.  *Stone*, 2006

WL 1305039.   The court held that the obscenity was actually protected speech and that the arrest

violated the plaintiff's First Amendment rights. *Id* at 13. Here, Plaintiff was not engaged in a Constitutionally protected activity. Refusing to give identification to a law enforcement officer who has reasonable suspicion of criminal activity is not constitutionally protected. *See Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt County*, 542 U.S. 177, 185 (2004). But even if it were, Plaintiff was not arrested for refusing to show his identification. This fact is demonstrated by the existence of an arrest warrant based upon suspected violation of the Roswell ordinance. (Docs. 20 at 4, 24 at 6.) Officer Roberts, in effectuating the arrest, acted pursuant to this warrant, and no facts indicate otherwise. In my opinion, this forecloses any argument that Officer Roberts arrested Plaintiff for refusing to show Officer Roberts his driver's license or that Plaintiff suffered some actionable injury in being arrested.

### *Officer Roberts is Entitled to Qualified Immunity.*

I find the undisputed facts of this case support Officer Roberts's entitlement to qualified immunity. I have already elaborated on Roberts's entitlement to qualified immunity in my discussion of Plaintiff's claims for wrongful arrest and detention. I reference that discussion here and supplement it by pointing out, as I already have, that refusing to give identification to a law enforcement officer who has reasonable suspicion of criminal activity is not constitutionally protected. *See Hiibel*, 542 U.S. at 185. And even if such action is constitutionally protected, as I have also already discussed, Officer Roberts did not arrest Plaintiff for refusing to show his identification. He arrested Plaintiff pursuant to an arrest warrant supported by probable cause, and Officer Roberts gave no false or misleading information in procuring that warrant. Thus, Officer Roberts is entitled to qualified immunity on Plaintiff's retaliation claim, and Defendants are entitled to summary judgment on the claim.

C.      **Wrongful Detention Against Judge Pineda**

I find that this claim lacks merit and that Defendants are entitled to summary judgment. Plaintiff alleges that Judge Pineda "wrongfully found Plaintiff in violation of a court summons after having actual knowledge that Plaintiff had sued Pineda by Writ of Prohibition in the Fifth Judicial District Court and served Pineda with a Notice of Abatement." (Doc. 1 at 11.)   Plaintiff further contends that Judge Pineda acted despite having a personal conflict, and that he failed to provide Plaintiff with counsel.  (Doc. 1 at 11.)  Plaintiff claims that Judge Pineda is not entitled to immunity because he was performing ministerial, not judicial functions.  (Doc 1. at 12.)  Defendants argue that Judge Pineda is entitled to absolute immunity.  (Doc. 20 at 14.)  I agree.  Judges are entitled to absolute immunity that can be overcome in only two circumstances: (1) where the action taken is not taken in the judge's judicial capacity; or  (2) where the judge takes action in the complete absence of all jurisdiction.  *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).  Judicial immunity "is *not* overcome by allegations of bad faith or malice." *Id.* at 11 (emphasis added).

Regarding the first exception, an action is taken in a judicial capacity if the general nature or function of the action is that normally performed by a judge.  *Mireles*, 502 U.S. at 12-13.  In determining whether an action is taken in a judicial capacity, the court looks to "'nature'" and "'function'" of the act, and not at the "'act itself.'" *Id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  I do not believe Plaintiff has adequately alleged or established that Judge Pineda acted outside of his judicial capacity.  None of the allegations in the complaint meet this exception to judicial immunity.  Plaintiff argues that: "Judge Pineda violated Plaintiff's procedural due process right by summarily sentencing him to thirty days in jail for contempt without affording Hazelton a hearing; an opportunity to prepare a defense or to retain counsel."  (Doc. 24 at 20.)  Sentencing,

19

though, is quite clearly a judicial activity.  Regardless of any due process violations that may or may not have arisen from this activity, Judge Pineda acted in a judicial capacity.

Regarding the second exception, I find that, based upon the undisputed facts, Judge Pineda did not act in the complete absence of all jurisdiction.  As Defendants point out, municipal judges have jurisdiction over municipal ordinance violations.  *See* N.M.S.A. 1978 § 35-14-2 ("Each municipal court has jurisdiction over all offenses and complaints under ordinances of the municipality . . . .").  Moreover, municipal judges may issue contempt citations.  *See id.* ("Each municipal court . . . may . . . punish for contempt.").  The undisputed facts show that Judge Pineda did nothing more than preside over a matter concerning the violation of a municipal ordinance, issue a contempt citation when Plaintiff failed to show up for court, and sentence Plaintiff to jail time pursuant to a finding of contempt.   Even assuming Judge Pineda did violate Plaintiff's due process rights in the manner described above, I find no facts that would indicate Judge Pineda at any time acted in the complete absence of all jurisdiction.  *See Mireles*, 502 U.S. at 13 (concluding that even when a judge orders excessive use of force to make someone appear in a matter before him, he is likely not acting in the complete absence of all jurisdiction because he has jurisdiction over the matter before him).  Therefore, I find that defendants are entitled to summary judgment on Plaintiff's cause of action for wrongful detention against Judge Pineda.

**D.    Plaintiff's Pendent State Law Claims**

Having determined that summary judgment must be granted in favor of Defendants on all of Plaintiff's federal claims, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3).  The exercise of supplemental jurisdiction is discretionary. *New Mexico v. General Electric Co.*, 335 F. Supp. 2d 1157, 1176 (D.N.M. 2003) (citation omitted).

A federal district court may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it had original jurisdiction. *See* § 1367(c)(3). Therefore, I find that Plaintiff's state law claims should be dismissed without prejudice.

**IV.   CONCLUSION.**

The undisputed facts presented by the parties establish that Officer Roberts properly obtained an arrest warrant prior to taking Mr. Hazelton into custody. The facts further show that Roberts acted pursuant to the warrant in arresting Hazelton, and that Roswell Police Department policy did not cause Mr. Hazelton any injury. Finally, the undisputed facts show that Judge Pineda acted in a judicial capacity, and not without all jurisdiction, in his dealings with Mr. Hazelton. After considering all of the evidence and construing all inferences in favor of Plaintiff, I find that Plaintiff's federal claims fail as a matter of law. Accordingly, I will grant Defendants' Motion for Summary Judgment on all federal claims. With respect to Plaintiff's state law claims, I find it appropriate to decline supplemental jurisdiction over them. Accordingly, I will dismiss them without prejudice.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED on all claims with respect to Defendant Roberta Vasquez**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED on all federal claims (Counts I-III of the complaint) (***see*** Doc. 1 at 8-12) with respect to all remaining Defendants**.

**IT IS FURTHER ORDERED** that Plaintiff's pendent s**tate law claims (Count IV of the complaint) (***see*** Doc. 1 at 12.) are DISMISSED WITHOUT PREJUDICE with respect to all remaining Defendants.**

21

**IT IS SO ORDERED.**

_____

**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**